UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY M. DUKES,

    Plaintiff,

v.        Case No. 1:13-cv-623
    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on June 3, 1966 (AR 168).[1] He alleged a disability onset date of February 15, 2009 (AR 191). Plaintiff had four or more years of college, and had special job training at a police academy and at truck driving school (AR 200). He had previous employment as a police officer, public school security officer and truck driver (AR 196). Plaintiff identified his disabling conditions as post-traumatic stress disorder (PTSD), depression, left knee acl repair, bone spurs, meniscus damage and left hip strain (AR 195). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 1, 2011 (AR 36-58). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th

Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 15, 2009, and that he met the insured status requirements of the Social Security Act through March 31, 2014 (AR 38). At the second step, the ALJ found that plaintiff had the following

severe impairments: PTSD; depression; left knee pain status-post surgical repair; right shoulder pain; and obesity (AR 38).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 39).  Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint), 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety related disorders), or 12.09 (substance addiction disorders) (AR 39-44).

The ALJ decided at the fourth step that plaintiff:

> . . . has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) such that he is able to lift and carry twenty pounds occasionally and ten pounds frequently. He is able to push and/or pull up to ten pounds occasionally.  He is able to stand and/or walk two hours in an eight-hour workday and sit up to six hours of an eight-hour workday with normal breaks.  He requires the option to alternate between sitting and standing at will.  He may occasionally climb ramps and stairs, but must not climb ladders, ropes, or scaffolds.  He may occasionally stoop, kneel, crouch, and crawl.  He must avoid unprotected heights and dangerous machinery as well as walking on uneven surfaces.  He must not perform overhead work. He is limited to simple, routine, repetitive tasks involving simple work related decisions with few, if any, workplace changes.  He may have occasional interaction with coworkers and supervision, but must not have public interaction.

(AR 44-45).  The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 56).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the State of Michigan) (AR 56-57). Specifically, plaintiff could perform the following: machine tender (2,500 jobs); and inspector (3,000 jobs) (AR 57).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from February 15, 2009 (the alleged onset date) through October 21, 2011 (the date of the decision) (AR 57-58).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**Did the Commissioner err by failing to properly apply what is commonly referred to as the "Treating Physician Rule," pursuant to 20 C.F.R. § 404.1527(b)?**

Plaintiff contends that the ALJ provided identical boilerplate statements to the treating source opinions offered by Hakima Aqel, M.D. and Darryl P. Plunkett, Ph.D., which only addressed whether the opinions should be accorded controlling weight and failed to give good reasons for the weight accorded to these opinions as required by 20 C.F.R. § 404.1527(c)(2). Treating physicians' medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### A. Dr. Plunkett's mental RFC

The ALJ addressed Dr. Plunketts' mental RFC assessment as follows:

> In June 2010, Darryl P. Plunkett, Ph.D., reported to be a treating psychologist, provided an assessment, in which he opined the claimant would have marked limitations in making most occupational adjustments, including following work rules, relating to coworkers, dealing with the public, interacting with supervisors, using judgment, dealing with work stresses, and functioning independently (l2F/2). He assessed the claimant would have extreme limitations in maintaining concentration and attention (l2F/2). He reported these limitations existed since August 12,2009 (l2F/2). He noted the claimant has marked limitations in understanding, remembering, and carrying out complex and detailed job instructions, as well as mild limitations with simple job instructions (12F/2-3). He opined that since May 1, 2009, the claimant has had moderate limitations in maintaining personal appearance, behaving in an emotionally stable manner, relating predictably, and demonstrating reliability (12F/3). He assessed the claimant, since May 1,2009, had moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, and extreme difficulties in maintaining concentration, persistence, or pace (12F/3). The undersigned accords little weight to this assessment, as it is not consistent with or supported by the weight of the medical evidence of record. Additionally, Dr. Plunkett's assessment appears to rely primarily to the claimant's inaccurate history and subjective complaints. Although the claimant testified he started treating with Dr. Plunkett two years prior to the hearing, the available medical evidence of record contains no treatment records or notes from evaluations performed by Dr. Plunkett.

(AR 53).

As an initial matter, it is unclear from the ALJ's decision as to whether the he viewed

Dr. Plunkett as a treating psychologist or an examining psychologist. While the ALJ noted the absence of any records from Dr. Plunkett, the doctor stated that he first treated plaintiff on May 1, 2009 and most recently treated him on June 25, 2010, the date he prepared the assessment (AR 746). The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). In this instance, the Court cannot follow the ALJ's reasoning with respect to Dr. Plunkett to perform an appellate review. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should determine whether Dr. Plunkett's opinion is that of a treater or an examiner, and then evaluate the opinion accordingly.

### B.    Dr. Aqel's mental and physical RFC assessments

Dr. Aqel prepared both a mental and physical RFC assessment of plaintiff. The ALJ addressed Dr. Aqel's mental RFC assessment as follows:

> The undersigned also considered the mental residual functional capacity assessment of Dr. Aqel. In June 2010, Dr. Aqel opined the claimant had marked limitations in his ability to deal with work stresses and maintain attention and concentration, as well as moderate limitations in his ability to follow work rules, relate to coworkers, deal with the public, interact with supervisors, and use judgment (11F/2). She assessed the claimant is able to function independently with mild limitations (11F/2). She noted these limitations first affected the claimant's activities on August 12, 2009 (11F/2). She reported the claimant has marked limitations in

7

> understanding, remembering, and carrying out detailed but not complex instructions, but indicated the claimant has moderate limitations with complex instructions (11F/2). She stated these limitations existed since April 20, 2009 (11F/3). Dr. Aqel opined the claimant has moderate limitations in behaving emotionally stable, relating predictably, and demonstrating reliability, as well as mild limitations in maintaining his appearance (11F/3). She assessed he had moderate limitations in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and three episodes of decompensation that were of extended duration (11F/3). The undersigned accords little weight to this assessment, as it is not consistent with or supported by the weight of the medical evidence of record. Additionally, Dr. Aqel's assessment appears to rely primarily to the claimant's inaccurate history and subjective complaints.

(AR 53).

In addition, the ALJ addressed Dr. Aqel's physical RFC as follows:

> The undersigned considered the July 2010 physical residual functional capacity assessment of Dr. Aqel, who opined the claimant is able to lift and carry twenty pounds occasionally and twenty-five pounds frequently (13F/3). She noted the claimant is able to stand and/or walk at least two hours in an eight-hour workday and sit about six hours in an eight-hour workday with normal breaks (13F/3). She assessed the claimant must have the option to alternate between sitting and standing (13F/3). She reported the claimant has limited pushing and pulling abilities in his lower extremities (13F/3). She noted no postural, manipulative, visual, communicative, or environmental limitations (13F/4-6). She opined the claimant would not have serious limits as to pace and concentration, despite the assessment she made in her June 2010 mental residual functional capacity assessment (*See* 11F/2 and 13F/7). She assessed the claimant would not miss more than three days of work a month or be tardy more than three days a month (13F/7). She reported the claimant would need unscheduled breaks and would be best suited for part time work (13F/7). The undersigned accords little weight to this assessment, as it is not consistent with or supported by the weight of the medical evidence of record. Additionally, Dr. Aqel's assessment appears to rely primarily to the claimant's inaccurate history and subjective complaints.

(AR 54).

There is no question that Dr. Aqel treated plaintiff. The issue presented is whether the ALJ gave good reasons for the weight assigned to Dr. Aqel's opinion. While the ALJ's decision set forth plaintiff's medical history at length (AR 45-52), he did not provide a sufficient explanation

8

for why Dr. Aqel's opinions were not consistent with, or supported by, the weight of the evidence. Nor does the ALJ explain how Dr. Aqel's assessment was based on plaintiff's inaccurate history.

In addition, the ALJ does not explain why Dr. Aqel could not rely on plaintiff's subjective complaints in evaluating his mental condition. The Sixth Circuit has recognized the subjective nature of mental impairments, stating that "[m]ental disorders are not uncommonly diagnosed *after one interview*." *Blankenship*, 874 F.2d at 1121 (emphasis added). As the Sixth Circuit explained:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [ sic ] in order to obtain objective clinical manifestations of medical illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship*, 874 F.2d at 1121, quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (brackets in original).

Based on this record, the ALJ failed to give good reasons for the weight assigned to Dr. Aqel's opinion. *See Wilson*, 378 F.3d at 545. However, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* at 546-47. As the party attacking the agency's determination, plaintiff has the burden of establishing that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Here, plaintiff has met that burden by pointing out: the lack of evidence to support the ALJ's determination that Dr. Aqel

relied on an inaccurate history and subjective complaints; that Dr. Aqel was a physician at the VA where plaintiff sought treatment since 2009; and that Dr. Aqel's physical RFC assessment was based in part on plaintiff's longitudinal course of care and an x-ray from November 16, 2009, revealing moderate osteoarthritis and prior ACL repair (AR 778).

Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should re-evaluate the mental and physical RFC assessments completed by Dr. Aqel.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) determine whether Dr. Plunkett's opinion is that of a treater or an examiner, and then evaluate the opinion accordingly, and (2) re-evaluate Dr. Aqel's mental and physical RFC assessments in a manner consistent with this Opinion. A judgment consistent with this opinion will be issued forthwith.

Dated:  September 22, 2014                          /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge